IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KEISER LAND COMPANY, INC.,

    Plaintiff,

v.                                                          No. 1:09-cv-1253

TIMOTHY C. NAIFEH, MARCUS E.
POPE, ROBERT POPE, MRS. JOE
(ADELL) ROBISON, MRS. FLOYD
(JOANN) DOCKERY, DOUG
ROBERTSON, SR., and STEVE NORTH,
    Defendants.

---

**ORDER GRANTING ROBERT POPE'S AND STEVE NORTH'S MOTIONS FOR THE COURT TO REFRAIN FROM EXERCISING JURISDICTION AND DISMISSING CASE WITHOUT PREJUDICE**

---

Before the Court are the December 18, 2009 duplicate motions of Defendants, Steve North and Robert Pope, requesting that the Court abstain from exercising jurisdiction over this action.[1] (Docket Entry ("D.E.") Nos. 4 and 5.)[2] The Plaintiff has responded to the motions. (D.E. No. 7.) For the reasons set forth hereinafter, the Court **GRANTS** the Defendants' motions and **DISMISSES** this action without prejudice.

---

[1] Defendants have styled their motions as ones "to dismiss the . . . action." (D.E. No. 4, MD, p. 1.) However, they have not relied upon any of the Federal Rules of Civil Procedure, and from the substance of their motions, it appears that none of the Rules apply. They do not argue that Plaintiff has failed to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6), nor do they argue that the Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1). Nevertheless, district courts frequently encounter motions such as the current ones in which parties argue not that the case is procedurally or substantively defective, but that the court should refrain from exercising its jurisdiction instead. *See, e.g.*, Scottsdale Ins. Co. v. Roumph, 18 F. Supp. 2d 730 (E.D. Mich. 1998), *aff'd*, 211 F.3d 964 (6th Cir. 2000) (upon defendant's motion, district court abstained from exercising declaratory judgment jurisdiction without relying upon the Federal Rules of Civil Procedure); s*ee also* United States Fire Ins. Co. v. Albex Aluminum, Inc., 161 F. App'x 562, 563 (6th Cir. 2006) (although the district-court challenge was styled as a motion to dismiss, Sixth Circuit, instead of applying *de novo* review as it would in a "typical situation," used abuse-of-discretion standard by which it reviews district court decisions to abstain from jurisdiction over declaratory judgment actions).

[2] Because the motions are identical, the Court will refer only to D.E. No. 4 when citing the Defendants' arguments.

This is an action in which the Plaintiff, Keiser Land Company, Inc. ("Keiser"), has asked the Court to quiet title to a "300± acre island" located in the Mississippi River in Lake County, Tennessee. (D.E. No. 1, Complaint, ¶ 6.) Plaintiff contends that it has proper title in fee simple to the island by virtue of a warranty deed that it received on January 29, 2009. (Id. at ¶¶ 5-8.) Alternatively, Keiser avers that it has acquired title to the island by adverse possession. (Id. at ¶¶ 40-50.) Accordingly, it requests that the Court "declare and adjudge that Plaintiff owns the 300± acre island, in fee simple, and is entitled to the quiet and peaceful possession thereof . . .." (Id. at p. 10.) Although the statutory citation is absent from its complaint, Plaintiff presumably seeks to invoke the Declaratory Judgment Act, 28 U.S.C. § 2201(a),[3] because it asks the Court to "declare" that it owns the island. (D.E. No. 1, Complaint, p. 10.)

In these motions, the Defendants contend that North and Pope filed a previous quiet-title action in Lake County, Tennessee Chancery Court on October 5, 2009, more than a month prior to the filing of this suit. (D.E. No. 4, MD, pp. 1-2.) North and Pope, the Plaintiffs in the state action, assert that both lawsuits seek "the same remedy, title to the 300-acre tract of land lying in Lake County. . .." (Id. at p. 2.) The movants maintain that "the issues involve complex matters of state law," which the Plaintiff does not deny, and that "the real parties of interest are the same [in the state action] as they are in the federal court action," though they concede that Defendants, Timothy Naifeh and Doug Robertson, Sr., are not parties in the state action, and that Jeanne Tipton is a party in the state action but not in the federal one. (Id.)

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S. Ct. 2137, 132

---

[3]   28 U.S.C. § 2201(a) provides, in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

L. Ed. 2d 214 (1995). In Wilton, the United States Supreme Court granted *certiorari* to resolve a circuit split—resulting from apparently inconsistent Supreme Court precedent—as to the analysis district courts should employ when deciding whether to refrain from exercising jurisdiction over a declaratory judgment action. Id. at 281. *Compare* Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942) (noting that a federal district court is "under no compulsion to exercise" its jurisdiction over declaratory judgment actions), *with* Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (district courts may not abstain from exercising jurisdiction absent "exceptional circumstances") *and* Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (same).[4]

The Supreme Court, however, held that Brillhart, Colorado River, and Moses H. Cone were not in fact inconsistent, and it reiterated Brillhart's permissive language:

> Neither Colorado River, which upheld the dismissal of federal proceedings, nor Moses H. Cone, which did not, dealt with actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1988 ed., Supp. V). Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the "exceptional circumstances" test of Colorado River and Moses H. Cone.

Wilton, 515 U.S. at 286. The Court went on to note that it has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion [sic] on the courts rather than an absolute right upon the litigant,' " and thus, "[w]hen all is said and done, we have

---

[4] In its response to the Defendants' motion, Plaintiff argues that Colorado River's abstention doctrine controls the Court's decision whether to refrain from exercising jurisdiction. (D.E. No. 7, Response to MD, pp. 4-8.) However, the Sixth Circuit has held, explicitly, that "in contrast to the invocation of Colorado River's abstention doctrine, a district court does not need to point to 'exceptional circumstances' in declining to exercise jurisdiction in a declaratory judgment suit." United States Fire Ins. Co. v. Albex Aluminum, Inc., 161 F. App'x 562, 564 (6th Cir. 2006) (citing Wilton, 515 U.S. at 286 and Colorado River, 424 U.S. at 818-20). Thus, as Wilton and subsequent Sixth Circuit case law make clear, Colorado River and its progeny do not supply the applicable precedent in this case.

concluded, 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.' " Id. at 287 (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241-43, 73 S. Ct. 236, 97 L. Ed. 291 (1952)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288. Thus, the Court held that "a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id.

The Supreme Court, however, did not attempt to delineate "the outer boundaries" of a district court's discretion to decline to exercise jurisdiction over declaratory judgment actions, holding simply that the facts of the case then before it justified the district court's decision. Id. at 289-90. Thus, the Supreme Court left it to the circuit courts of appeal to define the circumstances under which district courts appropriately may refuse to exercise jurisdiction over such actions. The Sixth Circuit first did so in 1984 in Grand Trunk W. R.R. Co. v. Consol. Rail Corp., 746 F.2d 323 (6th Cir. 1984), articulating five factors district courts should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

Id. at 326 (citations omitted). The Sixth Circuit has "consistently upheld decisions of the district courts declining jurisdiction in declaratory judgment cases after a reasoned analysis of the five-

4

factor test." United States Fire Ins. Co. v. Albex Aluminum, Inc., 161 F. App'x 562, 564 (6th Cir. 2006) (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 969 (6th Cir. 2000)). By contrast, a district court's failure to apply the factors can constitute reversible error. *See, e.g.*, AmSouth Bank v. Dale, 386 F.3d 763, 785 (6th Cir. 2004). When a district court is called upon to make this determination, "competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a subsequently-filed [sic] state-court coercive action." AmSouth, 386 F.3d at 785.

  A.  Settling the Controversy and Clarifying the Legal Relations

  The first two factors of the Grand Trunk analysis are "closely related," and as a result, courts frequently consider them together. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008). In this case, the Court finds it appropriate to do so because the analyses of these two considerations involve common facts.

  In terms of whether a declaratory judgment would settle the controversy, the Court's analysis is self-explanatory: would a declaratory judgment resolve the entire disagreement between the parties, and not merely a discrete part of a larger dispute? Scottsdale, 513 F.3d at 554-55. Generally, this factor is much more significant when the federal declaratory judgment action concerns only a small part of, or differs substantially from, the corresponding state court suit or fails to include all of the parties who have a stake in the litigation. *See, e.g.*, Scottsdale, 513 F.3d at 554-55; AmSouth, 386 F.3d at 785-86. In this case, both the present declaratory judgment action and the corresponding state action are identical in purpose and scope—Keiser concedes that "[b]oth the state suit and the federal suit deal with the ownership or title to [the same] 300 acre island . . . ." (D.E. No. 7, Response to MD, p. 2.) The parties in the two actions

are not completely identical, though Plaintiff has not attempted to argue that the parties who are absent from the state-court action are necessary or indispensable parties.[5] Although the federal and state actions in this case were filed from opposing points of view, the "controversy" that was the genesis of both actions is the same: which party(s) has title to the parcel of land at issue? Thus, the Court finds that a declaratory judgment, in this case, probably would settle the controversy between the parties—a determination as to who owns the land represents the entirety of the relief that all parties seek. Nevertheless, because there are some differences in the parties involved in the two actions, it is unclear that a declaratory judgment from this Court would settle the *entire* controversy among all potential litigants who may claim an interest in the land. For that matter, the state court is equally able to settle the controversy in this instance. Therefore, the Court finds that because the impact of the disparity between the parties in the two actions is unclear, and since the state court is equally able to settle the controversy, it is indeterminate whether a declaratory judgment would settle the entire controversy. If anything, this lack of clarity would counsel against the exercise of jurisdiction.

Likewise, the Court finds that it is unclear whether a declaratory judgment would clarify the legal relations at issue between the parties. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." Scottsdale, 513 F.3d at 557 (citing Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 814 (6th Cir. 2004) and Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003)). This second factor "is based upon [a] desire for the declaratory judgment to provide a final

---

[5] Rule 19(a) of the Federal Rules of Civil Procedure states, in pertinent part, that a person must be joined as a party if "in that person's absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." In this case, Plaintiff merely names the parties to the different actions and says, "Clearly, the parties to the Chancery Court case and the parties to the United States District Court case are not identical." (D.E. No. 7, Response to MD, p. 2.)

resolution of the discrete dispute presented." Scottsdale, 513 F.3d at 557. Thus, the Court is to determine whether the federal declaratory judgment will resolve the questions presented "once and finally." Id. As with the previous factor, this one is more significant when the declaratory judgment action is but a small part of a larger dispute between parties. Because the only issue between the parties is which of them has title to the land, this Court's resolution of that question would settle the controversy and would clarify the legal relations. Since there are some differences between the two actions with respect to the parties involved, however, it is not clear that a declaratory judgment would completely resolve the questions as to all parties with a stake in this litigation. Id. As such, the Court finds, again, that this factor weighs against the exercise of jurisdiction, because as with the previous factor, the state court is equally able to clarify the legal relations at issue and the parties are not identical.

      B.      Race for *Res Judicata*

Under the third factor, the Court seeks to determine whether the declaratory judgment action is motivated by "procedural fencing." AmSouth, 386 F.3d at 788; *see also* Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 750 (7th Cir. 1987) (a federal declaratory judgment "is not a prize to the winner of the race to the courthouse") (citations and internal quotation marks omitted). This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.' " Scottsdale, 513 F.3d at 558 (quoting AmSouth, 386 F.3d at 788); *see also* Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 712 (7th Cir. 2002) (a declaratory judgment "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse") (citation and internal quotation marks omitted). The focus of the Court's

7

inquiry is "not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get [its] choice of forum by filing first." AmSouth, 386 F.3d at 789.

Disposition of this factor usually turns upon the motive of the party seeking the declaratory judgment. Federal courts generally take a "dim view" of a declaratory plaintiff—who is the defendant in corresponding state litigation—seeking a declaratory judgment solely for the purpose of obviating jurisdiction in state court. AmSouth, 386 F.3d at 788. By contrast, however, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Scottsdale, 513 F.3d at 558 (internal citations omitted). Frequently, this issue of bad faith arises when the declaratory plaintiff somehow misled the defendant into believing that no declaratory judgment action would be filed, or that settlement negotiations were ongoing. *See, e.g.*, AmSouth, 386 F.3d at 790 (finding bad faith because of "affirmative representations" designed to "lull [the opposing parties] into believing that amicable negotiation was still possible"); Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747-48 (S.D.N.Y. 1977) ("Potential plaintiffs should be encouraged to attempt settlement discussions . . . without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint").

In the current suit, there has been no evidence presented to the Court—and Defendants have not alleged—that Keiser filed this declaratory judgment suit merely in an effort to forestall being haled into state court. Moreover, Keiser did not deliberately deceive Defendants so as to prevent them from filing a suit in state court—indeed, in this case, the state-court action was filed first, so Keiser's decision to initiate a federal suit could not and did not preclude North's and Pope's ability to sue in state court.  On the other hand, Plaintiff's decision to file a declaratory judgment action with this Court does seem to be an attempt to circumvent North's

and Pope's chosen forum for the litigation.[6] Without more, it does not seem that this rises to the level of "bad faith," but Keiser is at least aware that North's and Pope's chosen forum for the dispute would be state court; its filing of a declaratory judgment action with this Court, then, was, to a certain extent, an attempt to preclude the state courts from deciding the issue. This is a close question, which the Court finds provides little guidance, and thus, it will accord this part of the analysis little consideration when balancing the factors.

      C.      Increased Friction Between Federal and State Courts

In Wilton, the Supreme Court noted that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' " if it decided to exercise jurisdiction over the declaratory action. Wilton, 515 U.S. at 283 (quoting Brillhart, 316 U.S. at 395). "Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495. However, the mere fact that there is a corresponding state court proceeding "is not determinative of improper federal encroachment upon state jurisdiction." Scottsdale, 513 F.3d at 559-60 (internal citation and quotation marks omitted). Thus, the Sixth Circuit has developed three additional sub-factors to be considered when a court evaluates this factor:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal

---

[6] In the state-court action, Keiser not only answered North's and Pope's complaint, but also filed a counterclaim in which it raised essentially the same arguments as it has in its federal action. (D.E. No. 4-3, State Court Answer and Counterclaim.)  In so doing, Keiser, if nothing else, implicitly acknowledged that the state court is able to resolve all of its claims satisfactorily.

>     common or statutory law dictates a resolution of the declaratory
>     judgment action.

Scottsdale, 513 F.3d at 560 (citing Bituminous, 373 F.3d at 814-15). The Court will consider each sub-factor seriatim.

    1.    <u>Resolution of Factual Issues</u>

This sub-factor concerns whether a district court should wait for the state court to resolve any necessary factual issues before it attempts to rule on the declaratory action. Scottsdale, 513 F.3d at 560. Occasionally, resolution of the issues raised in federal court—especially if different from those raised in state court—may "require making factual findings that might conflict with similar findings made by the state court." Id. (citation omitted). In other words, unless the issue before the federal court is purely an issue of law, a district court should evaluate whether it will be in a position to make unnecessarily duplicative findings of fact that have the potential to conflict with those made by the state court.

In this case, in making a determination of the parties' ownership rights of the land, the Court necessarily would be called upon to make some findings of fact unless the parties agreed on all material facts—which they do not. On the other hand, it is unlikely that this Court would be called upon to make findings of fact that contradict those of the state court, as the first court to resolve this issue will create a *res judicata* bar to the other court's consideration of these issues. Thus, this sub-factor provides little guidance, and in any event, the Court finds that in this case, it is less important than the other two sub-factors.

    2.    <u>Better Position to Evaluate and Close Nexus</u>

The second sub-factor focuses upon "which court, federal or state, is in a better position to resolve the issues in the declaratory action." Scottsdale, 513 F.3d at 560. State courts frequently are in a better position to determine "novel" questions of state law. Id. "This

consideration appears to have less force when the state law is clear, and when the state court is not considering the issues." Id. Similarly, the third sub-factor requires a district court to evaluate "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." Id. at 561.

      In this case, the only issue—title to the parcel of land—is purely a matter of state law. North and Pope assert that "the issues involve complex matters of state law," to which the Plaintiff has offered no objection. (D.E. No. 4, MD, p. 2.) There is no indication that there is anything particularly "novel" about the state-law question presented—it appears to be nothing more than a typical quiet-title action. Scottsdale, 513 F.3d at 560. The Court has not found any clearly expressed preference on the part of the Tennessee legislature or Tennessee courts to have quiet-title actions adjudicated by Tennessee courts, nor is there any apparent public policy in Tennessee that counsels against federal jurisdiction over such lawsuits. However, because there is a preexisting suit in state court that would decide the same issues present in the action before this Court, and in light of the Tennessee courts' expertise in dealing with matters of state law and the absence of any claim based upon federal statutory or common law, the Court finds that the second and third sub-factors—and thus, this factor as a whole—weigh against the Court's exercise of jurisdiction over the declaratory action.

      D.      Availability of Alternative Remedy

      A district court should abstain from exercising jurisdiction over a declaratory action " 'if an alternative remedy is better or more effective.' " Scottsdale, 513 F.3d at 562 (quoting Grand Trunk, 746 F.2d at 326). One such alternative remedy is the ability to file a comparable action in state court. Scottsdale, 513 F.3d at 562. The Sixth Circuit has eschewed the idea of prescribing a general rule to apply in resolving this factor, noting that the inquiry "must be fact specific,

involving consideration of the whole package of options available to the federal declaratory plaintiff." Id. The Court finds that this factor is of little consequence because the analysis thereof is largely subsumed by the previous factor. Clearly there is an alternative remedy available in this case: the lawsuit in state court that the Defendants already have filed. Without more, there would be nothing to indicate that the state court is a "better or more effective" forum for resolving this dispute, Scottsdale, 513 F.3d at 562, but as indicated above, the issue in this case is purely one of state law, and is one that Tennessee courts are more accustomed to handling. The Court finds that this makes Tennessee courts the appropriate forum for handling such issues of state law. On balance, however, this factor does little to sway the Court's ultimate determination of whether to exercise jurisdiction, simply because it already has taken into account the superior position that Tennessee courts occupy in terms of deciding issues of land title disputes.

      E.      Balancing the Factors

The Sixth Circuit, in keeping with many of its other multi-factor tests, has not prescribed the exact manner in which a district court should balance the Grand Trunk factors. Scottsdale, 513 F.3d at 563. In this case, the first two factors do not provide much guidance—given the uncertainty created by the differences in parties between the two actions—but if anything, they weigh somewhat against the Court's exercise of jurisdiction; the fourth factor weighs more heavily against it; the fifth is essentially redundant because of the fourth; and the third is neutral. The Court believes that despite the fact that none of the factors point strongly in either direction, there are very few reasons in favor of its continued exercise of jurisdiction over this matter. In light of the "unique and substantial" discretion that the Declaratory Judgment Act confers upon district courts, the Court finds that the appropriate course of action is to decline to exercise jurisdiction over the declaratory action in favor of allowing the parties to resolve their dispute in

the ongoing state court proceeding.  Wilton, 515 U.S. at 286. Accordingly, the Defendants' motions are **GRANTED**, and this matter is hereby **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED** this, the 13th day of August, 2010.

    s/J. DANIEL BREEN
    UNITED STATES DISTRICT JUDGE